IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CAROLINA SANCHEZ-ZINNY and HECTOR
ESCOBEDO, individually and on behalf
of M.E., a minor,

                                    CASE NO.:

    Plaintiffs,

v.

THE ASSOCIATION FOR RETARDED CITIZENS
SOUTH FLORIDA, INC., d/b/a/ The Arc of South Florida,

    Defendant.
_____/

## COMPLAINT
## JURY TRIAL AND INJUNCTIVE RELIEF DEMAND

COME NOW, the plaintiffs, CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO, individually and on behalf of M.E., a minor, by and through undersigned counsel and sues the Defendant, THE ASSOCIATION FOR RETARDED CITIZENS SOUTH FLORIDA INC. d/b/a/ The Arc of South Florida (hereinafter "The Arc"), for its causes of action, state the following:

## PARTIES

1. The plaintiff, CAROLINA SANCHEZ-ZINNY, is an individual, *sui juris*, who resides in Miami Dade County, Florida, at all times relevant. CAROLINA SANCHEZ-ZINNY is the mother of M.E.

2. The plaintiff, HECTOR ESCOBEDO, is an individual, *sui juris*, who resides in Miami Dade County, Florida, at all times relevant. HECTOR ESCOBEDO is the father of M.E.

3. The plaintiffs, M.E., is a minor who has resides in Miami Dade County, Florida, at all times relevant. M.E. is a person with a disability pursuant to 42 U.S.C. § 12102.

4. The Defendant, THE ASSOCIATION FOR RETARDED CITIZENS SOUTH FLORIDA INC. d/b/a/ The Arc of South Florida is a not for profit Florida Corporation doing business in Miami Dade County, Florida.

## JURISDICTION AND VENUE

5. Jurisdiction for this action vests pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Americans with Disabilities Act, 20 U.S.C. § 12101 et seq. ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

6. Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that The Arc of South Florida resides in the judicial district and the cause of action accrued in the judicial district.

## GENERAL ALLEGATIONS

7. The Arc of South Florida is a local chapter of one of the largest volunteer organizations in the U.S. Founded in 1953 by a group of concerned parents. The Arc of South Florida (hereinafter "The Arc") purports serves the over 60,000 Miami-Dade County citizens with intellectual and developmental disabilities. The Arc further states that they are a major community agency, providing a variety of programs and services that affect hundreds of participants, their families and the community each and every day.

8. The Arc maintains several programs in several locations throughout Miami Dade County, and receives federal financial assistance to maintain its programs in the community.

9. One location named the Kendall Center, is located at 11025 SW 84th Street, Cottage 6 & 7, Miami, Florida 33173.

10. The Kendall Center offers the following programs: Project Thrive, Ace Academy, Positive Parenting Program, Early Childhood Summer Camp, Outreach Services and an Afterschool Program.

11. Project Thrive is an accredited early intervention program for infants and young children with intellectual and developmental delays or disabilities. Children in this program range in age from birth to five years. Children are offered a combination of educational techniques and specialized therapies that enable them to acquire skills that they would not necessarily develop on their own. Transportation is provided when necessary.

12. The ACE Academy is a private non-profit school for students with disabilities in grades Pre-K to 12th. ACE's integrated comprehensive program for the whole child addresses the social, educational and therapeutic needs of each child.

13. The Positive Parenting Program helps family members strengthen their relationships. The program provides opportunities for family members to learn together, share experiences, support each other, and build their parenting skills.

14. The Early Childhood Summer Camp provides fun opportunities for developing all skill areas while addressing individual needs through literacy, fitness activities, social skills, family involvement, summer water safety, multisensory environment room enhancement, creative arts, and field trips.

15. Outreach Services include Physical Therapy, Speech Therapy, Occupational therapy and Multi-Sensory Environment Experiences for participants provided at the Kendall Center.

16. The Kendall Center also provides an afterschool program for students within its day programs and children in the community.

17. M.E. is a four your old child who has been identified by the Miami Dade County Public School system as a student with a disability.  M.E. has been diagnosed with spina bifida, has significant mobility issues, language deficits and other developmental delays. She is paralyzed from the waist down and does not have the use of her legs. M.E. utilizes a wheelchair or stroller and currently needs assistance to transfer in and out of her chair.  She does not have the ability to stand and climb stairs. She needs assistance with dressing, feeding, using the bathroom, and all her daily living skills.  She is essentially nonverbal and communicates with jesters, vocalizations and face expressions.  M.E. loves music and stories, is very social, can sit up by herself and moves around her environment independently using her hands and arms.

18. M.E. began attending programs at The Arc, Kendall Campus, in August 2017, her younger brother began attending The Arc, Kendall Campus, in November 2017.  M.E. and her brother attended the day programs, afterschool programs and summer programs and intend to continue their education and therapies at The Arc, Kendall Campus.

19. M.E. was enrolled in the Project Thrive and the outreach program which provides her with all her related services, including occupational therapy, physical therapy and speech and language therapy. M.E. also participated in the afterschool program and Early Childhood Summer Camp. M.E. intended to go to camp at the Arc, Kendall Campus this summer.

20. The Arc, Kendall Campus is not accessible for any child who is mobility impaired or uses a wheelchair.

21. The Kendall Campus is made up of two buildings neither of which is accessible.

    a.   The front entrance has steps which need to be traversed before you can enter the building;

    b.    The bathrooms are not accessible for wheelchair users; and

    c.    The two buildings are not connected and a person must traverse stairs in order to go from one building to the next.

22. There is no accessible path in and through the buildings. While **one** of the buildings does have a service ramp marked "authorized employees only", such entrance goes into **one** classroom, a key is required and pass through two locked doors before getting into the building.

23. The ramp is not open to the public. An access code is required to access the building and the ramp enters into a classroom that is in use most, if not all the time.

24. When M.E. had to use that ramp, the classroom is interrupted and M.E. is required to cross through the classroom to get to the rest of the building or programs.

25. The Arc does not allow students, parents or the public to use the ramp. Some parents in the past, and M.E. are given some limited access to the ramp. But the families, including M.E.'s family has had to fight for that access and the program becomes hostile to those who have sought access to the ramp.

26. The Defendant became hostile to M.E. and her family each time a request was made to use the ramp. People inside the classroom would complaint when a request to open the door was made. Sometimes there were no one in the classroom so there was no one to open the door. The staff at the Arc would also do nothing to help those attempting to navigate the stairs or open the doors. There was no effort to assist the families or bus drivers who were dropping off children at the Kendall Campus.

27. CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO over the two year period, repeatedly asked for an accommodation to have a ramp at the front entrance. The requests were denied.

28. CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO paid privately for the services and programs at The Arc in conjunction with support from Florida Kid Care funding for therapies. The family paid approximately $800 a month to The Arc for M.E. The family also paid for their second child to attend afterschool at a rate of $30 a month.

29. The family learned that what the amounts that they paid for M.E. were over and above what others were paying for the same services.

30. In February 2019, CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO inquired about the higher charges and were told that they were paying a private pay rate but were welcome to find some other place take their children.

31. In April 2019, M.E. suffered a fractured knee. She came home from the Arc on Thursday, April 18th, with a swollen knee. It turned out that the knee was fractured and for which the doctor decided to place a cast on the leg to immobilize the knee so that it could heal faster. This is not an uncommon injury for child who are paralyzed and get hurt because they cannot feel pain the same way others would feel pain. Casting is also common for children on this age and disability to ensure healing happens quickly and correctly.

32. The Arc refused to allow M.E. to attend any program while she was in a cast. This exclusion resulted in M.E. also missing out on all her therapies.

33. The family asked for an explanation why M.E. could not attend the program or therapies and the Defendant stated that this was their unwritten policy and that M.E. had to remain out of the program until the cast was removed.

34. The family provided The Arc will medical information from the doctor stating that M.E. was cleared to return to school on April 29, 2019. The defendant still refused to allow M.E. to return to school citing possible unnamed safety concerns. The defendant once again stated that M.E. could return to the program once the cast was removed.

35. M.E. had the cast removed and returned to the program on May 15, 2019.

36. On that date, M.E. utilized the ramp to enter the program. M.E. was greet by her classroom teacher with excitement and M.E. was glad to be back at the Arc.

37. CAROLINA SANCHEZ-ZINNY, who is M.E.'s mother, returned to her car to drive her second child to a different part of the program to drop her son off at school.

38. When she got in the car, her three year old son was also present in the car, she was confronted by the director of the Kendall Campus and she was told that she was not welcome at the program and had to take her children and leave.

39. CAROLINA SANCHEZ-ZINNY was confused and upset. The director, Irma Alvarez, was aggressive, intensive and confrontational. The director kept sticking her hand through the car window invading the space of CAROLINA SANCHEZ-ZINNY, who felt threatened by the director's actions. CAROLINA SANCHEZ-ZINNY asked why they were not allowed to stay since the cast was removed and she had a note from the doctor allowing M.E. to return to school. The director stated that the children had been unilaterally withdrawn from the program and all therapies had been terminated. The director then stated that it was a board decision and that she had nothing to do with it but she had to leave the campus immediately and that she and her children were not allowed to be on the campus. CAROLINA SANCHEZ-ZINNY confused again asked why. CAROLINA SANCHEZ-ZINNY was angry and confused. She wanted her children to finish the school year and go

to camp without any further interruptions. CAROLINA SANCHEZ-ZINNY works and having M.E. home made it impossible for CAROLINA SANCHEZ-ZINNY to work. CAROLINA SANCHEZ-ZINNY was anxious to have the children return to the program, get back on a regular schedule and return to work. CAROLINA SANCHEZ-ZINNY was blindsided by the actions and aggression of the direction. CAROLINA SANCHEZ-ZINNY kept repeating, the cast is off, I have a doctor's note and I don't understand why my children can't stay.

40. Visibly annoyed, the director got someone on the phone and kept repeating that CAROLINA SANCHEZ-ZINNY needed to speak to this unknown person on the phone. CAROLINA SANCHEZ-ZINNY refused to take the director's phone and instead said she would go back into the school get M.E.

41. CAROLINA SANCHEZ-ZINNY attempted to return to the school to get M.E. and her supplies, like lunch box, diapers and wipes and changes of clothes. CAROLINA SANCHEZ-ZINNY attempted to go back into the program the same way she had come out, up the ramp. The director then screamed that CAROLINA SANCHEZ-ZINNY was trespassing and could not enter the school. The director stated that she was calling the police because CAROLINA SANCHEZ-ZINNY was a threat to the school.

42. CAROLINA SANCHEZ-ZINNY knocked at the door, the teacher opens the door and she entered the school, without incident, picked up M.E. and her personal belongings and left the campus with both her children.

43. CAROLINA SANCHEZ-ZINNY was not able to return to her son's classroom and his personal belongings remained at the school until they were finally returned by a therapist on July 15, 2019, who just happened to be present at a unrelated meeting with the parents.

M.E.'s brother also missed his preschool graduation and the therapist provided the family with a graduation photograph of their son in a cap and gown.

44. The director called the police, after CAROLINA SANCHEZ-ZINNY left and made a report.

45. After the fact, the family received a letter dated May 17, 2019, stating that the children were being removed from the program because CAROLINA SANCHEZ-ZINNY disregarded the rules, was unreasonably angry, made threatening statements and was uncivil to staff.

46. The children however had already been unilaterally removed from the program by May 15, 2019, so this removal does not appear to be related to the alleged actions by CAROLINA SANCHEZ-ZINNY on that date.

47. The children were removed in retaliation for the family's strong advocacy for M.E.'s access to the Kendall Campus and programs and questions about how much they were being charged compared to other families in the same program.

48. The Kendall Campus has a pattern and practice of refusing families the use of a single ramp that exists in one of the buildings, refusing to place a ramp at the entrance of the school and creating a hostile environment for those families who ask for an accommodation.

49. The Arc, who purports to serve children with development disabilities, including physical disabilities should be fully accessible.

50. The actions of the Defendant are discriminatory and retaliatory in violation of the ADA.

51. The overcharging of a family who is paying privately is a violation of the Unfair and Deceptive Trade Practices Act.

52. Plaintiffs have engaged Disability Independence Group, Inc. to represent them and are obligated to pay a reasonable fee for their services.

## COUNT I
## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §12181, et. seq.

53. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54. Plaintiff, M.E., who has spinal bifida and communication deficits that substantially limit one or more of her major life activities, including her ability to walk, stand, navigate stairs, hold open heavy doors as well as talk or communicate verbally.

55. M.E. is a person with a disability under Title III of the ADA.

56. The Defendant is a place of public accommodation and open to the public for preschool programs, school programs, therapies, parent programming, afterschool programming and summer camp and thus is subject to the requirements of Title III of the ADA.

57. Plaintiffs. CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO, intend to return their children to The Arc, Kendall Campus for school, therapies, afterschool programing and summer camp.

58. Defendant violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when they:

    a. Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access to individuals with disabilities;

  b. Failed to ensure that the facility was accessible to individuals with mobility disabilities; and

  c. Failed to remove architectural barriers.

59. Defendant had knowledge of their obligations under the Americans with Disabilities Act and was deliberately indifferent to the rights of Plaintiffs and other children with disabilities who are similarly situated.

60. The Defendant discriminates against M.E. and her parents on the basis of his disability because M.E. has encountered architectural barriers at Defendant's facility which prevent her from having full access to enjoy the goods and services available to the public.

61. M.E. and her parents have suffered and will continue to suffer direct and indirect injuries as a result of Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA. M.E. is denied the opportunity to participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at Defendant's facilities equal to those afforded to individuals without mobility disabilities.

62. M.E. has a realistic, credible, existing and continuing threat of discrimination due to Defendant's non-compliance with the ADA. M.E. has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by Defendant.

63. M.E. is not the only student or person in the community impacted by the lack of access to the campus and restrooms on the campus.

64. When the Plaintiffs advocated for an accommodation, they were unilaterally removed from the program in retaliation.

65. The Defendant's actions caused harm to M.E. who was not allowed to attend her preschool program, attend camp or most importantly receive her therapies.

66. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1)&(2).

67. Excluding a child from the Arc, a program designed to serve such children is exactly the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.

68. The Defendant has discriminated against M.E. in violation of the ADA on the basis of her disabilities and as a result of such discrimination, M.E. was excluded from the program and from having access to her therapies.

69. The actions of the Defendant were done with deliberate indifference to the rights of M.E. and her parents, and as such, the Plaintiffs are entitled to damages for their injuries as a result of these discriminatory policies.

**WHEREFORE,** Plaintiff respectfully prays that this Court grants the following relief against the Defendant, THE ASSOCIATION FOR RETARDED CITIZENS, SOUTH FLORIDA INC., including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act permanently enjoining the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff access to Defendant's facility. This includes entering a permanent injunction ordering the Defendant:

   a. To cease discrimination against Plaintiff and other individuals with mobility disabilities who may use wheelchairs or other assistive devices for mobility;

    b. To promulgate and comply with policies and procedures to ensure that the Defendant and its staff do not discriminate against individuals who have mobility disabilities and who may use wheelchairs or other assistive devices for mobility;

    c. To promulgate and comply with procedures to ensure that the Defendant will provide accessible seating areas throughout the facility with accessible lines of sight;

    d. To remove architectural barriers;

    e. Award reasonable costs and attorneys' fees; and

    f. Award any and all other relief that may be necessary and appropriate.

## COUNT II
## RETALIATION UNDER THE ADA

70. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

71. Retaliation is prohibited under the ADA. 42 U.S.C. § 12203.

72. The definition of retaliation is found in the implementing regulations of the Americans with Disabilities Act at 28 CFR 36.206.

73. Plaintiffs allege that the Defendant's unilateral removal from the program, the canceling of the therapies and the calling of the police was done in direct response and in retaliation for the parents' strong efforts to advocate for M.E.

74. A prima facie case for retaliation consists of four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an action adverse to the plaintiff; and 4) the protected activity and the adverse action are causally connected.

75. In this case, advocating for M.E. to have a ramp and other physical access to the campus and Arc programs is a protected action. The Defendant was aware of the family's advocacy and in response the Defendant removed the whole family from the program and unilaterally cancelled the child's therapies. When the family questioned the removal from the program, the police were called. As a result M.E. and her brother lost several months of education and therapies.

76. The parents have suffered hostile interactions with the Defendant while they were advocating to keep M.E. in the program including being called unreasonable, angry and uncivil. A police report was also filed against CAROLINA SANCHEZ-ZINNY

77. Plaintiffs have suffered severe emotional distress due to Defendant's retaliatory acts.

**WHEREFORE**, CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO, individually and on behalf of M.E., a minor, demand judgment against the Defendant, THE ASSOCIATION FOR RETARDED CITIZENS, SOUTH FLORIDA INC., for injunctive relief, including, but not limited to, appropriate policies, training, and reinstatement, attorney's fees and costs, and such further relief as the court deems just and equitable.

**COUNT III**
**SECTION 504 OF THE REHABILITATION ACT**

78. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

79. Defendant violated the Rehabilitation Act by discriminating against M.E. and her family because of her disabilities by

    a.   Denying M.E. the opportunity to participate in or benefit from the aid, benefit, or service;

  b. Affording M.E. an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

  c. Providing M.E. with an aid, benefit, or service that is not as effective as that provided to others;

  d. Retaliating against M.E. and her parents by removing M.E. from the program, cancelling her therapies, calling the police on her mother, and removing their entire family from the program.

80. The Defendant provides various programs and activities receiving Federal financial assistance, *see* 29 U.S.C. § 794. The Arc of South Florida receives Federal Financial Assistance from the United States Department of Agriculture, the United States Department of Education, the United States Department of Health and Human Services.

81. For the year ended, The Arc of South Florida, Inc. received $ 822,932 of Federal Grant awards.

82. In return for such grant awards, The Arc of South Florida entered into agreements with each of such entities for compliance with all non-discrimination laws, such as the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, as well as to promulgate policies, procedures, and a grievance policy.

83. When accepting the grants and agreeing not to discriminate against persons with disabilities, The Arc of South Florida knew that its facilities were not accessible to children who use wheelchairs, and that The Arc of South Florida was excluding these children from their programs and services.

84. At all relevant times, M.E. met the essential eligibility requirements for **Error! Reference ource not found.** provided by The Arc of South Florida. M.E. was a qualified individual with a disability within the meaning of the Rehabilitation Act.

85. At all times, The Arc of South Florida's officers and directors had actual knowledge that the condition of their facilities denied qualified children with disabilities access to and participation in their programs.

86. When CAROLINA SANCHEZ-ZINNY complained about the lack of accessibility for her daughter, instead of remediating the failure to provide access to the programs and services of the Arc of South Florida, the director, Irma Alvarez, excluded M.E. and her family from the programs and services of the defendant and attempted to have C.S.Z arrested.

87. As a direct and proximate result of the Defendant's, its employees', and agents' **Error! eference source not found.**.

88. Furthermore, by having explicit policies relating to non-discrimination against persons with disabilities and then disregarding the protected rights of persons with known and disclosed disabilities by failing to implement such policies, Defendant is vicariously liable through their employees egregious discrimination against M.E., CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO.

89. The Arc of South Florida, its employees', and agents' knew that harm to a federally protected right was substantially likely and failed to act on that likelihood.

**WHEREFORE,** Plaintiff respectfully prays that this Court grants the following relief against the Defendant, THE ASSOCIATION FOR RETARDED CITIZENS, SOUTH FLORIDA INC., including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to

discrimination in violation of Section 504 of the Rehabilitation Act, permanently enjoining the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff access to Defendant's facility.  This includes entering a permanent injunction ordering the Defendant:

a. To cease discrimination against Plaintiff and other individuals with mobility disabilities who may use wheelchairs or other assistive devices for mobility;

b. To promulgate and comply with policies and procedures to ensure that the Defendant and its staff do not discriminate against individuals who have mobility disabilities and who may use wheelchairs or other assistive devices for mobility;

c. To promulgate and comply with procedures to ensure that the Defendant will provide accessible seating areas throughout the facility with accessible lines of sight;

d. To remove architectural barriers;

e. Award economic and non-economic damages;

f. Award reasonable costs and attorneys' fees; and

g. Award any and all other relief that may be necessary and appropriate.

## COUNT IV
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

90. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

91. Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-.213, Florida Statutes is intended to protect the consuming public from those who engage in unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. § 501.202(2).

92. The Defendants in this matter, mislead the Plaintiffs into believing that they were paying similar rates to other families in the program who receiving the same services.

93. In reality the Plaintiffs were paying a much higher price for the same services under the guise that they were charged more because they were private pay consumers.

94. The prices being charged to the Plaintiffs shocks the conscious and offends established public policy.

95. The Arc receives funding from the Early Learning Coalition, The Children's Trust, the public school system and other such programs with the understanding that The Arc would provide free and low cost program to families in need.

96. Having a private pay system is not at issue, it is the higher rates being charged under the pretext of being private pay families.

97. The amounts being charged to the Plaintiffs are so far above what others are paying that it rises to the level of being immoral, unethical, oppressive, unscrupulous or substantially injurious to the Plaintiffs in this matter.

98. The prices being charged to this family are deceptive and unfair.

99. The family, who are not wealthy, made many sacrifices to be able to send M.E. to the Defendant's program practice and being overcharged for those services caused the family injury.

**WHEREFORE**, CAROLINA SANCHEZ-ZINNY and HECTOR ESCOBEDO, individually and on behalf of M.E., a minor , respectfully request this Court to declare the action of Defendant, THE ASSOCIATION FOR RETARDED CITIZENS, SOUTH FLORIDA INC., for overcharging for the same services as a person without a physical disability, is a violation of FDUTPA, and issue a permanent injunction enjoining the Defendant from charging such

disproportionate rates, reimburse the Plaintiff's for the excessive amounts paid and award Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## **JURY DEMAND**

A TRIAL BY JURY IS DEMANDED FOR ALL ISSUES TRIABLE AS OF RIGHT BY A JURY.

Respectfully submitted this 7th day of June, 2019.

> DISABILITY INDEPENDENCE GROUP, INC.
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Tel:  (305) 669-2822
> Fax:  (305) 442-4181
> Email: Mdietz@justDIGit.org
>           aa@justdigit.org
>           slanger@justdigit.org
>
> By: s/ *Matthew W. Dietz*
> MATTHEW W. DIETZ, ESQ.
> Florida Bar No.: 0084905
> STEPHANIE LANGER, ESQ.
> FLORIDA BAR NO.: 149720
>
> *Attorneys for the Plaintiffs*